## Myers' Appeal.

62  104
162  186

62  104
d193  446

1. A testator directed that his farm should "be appraised by three substantial freeholders, and the small property, &c., may be, together with the farm, appraised, or they may be taken separate, provided there can be more money made out of them; this I leave to the discretion of my executors." He then directed that his son John should have the first choice, and his son George the second, to take the property at the valuation; if both declined, the land to be sold; and the proceeds of his real and personal property to be divided amongst his children. He appointed John and George his "executors to all intents and purposes, and to be vested with all the powers appertaining to the office of executors to carry into force and effect this my last will," &c. *Held*, that the powers conferred by the will were to be exercised by the executors under the direction of the Orphans' Court, by the Act of February 24th 1834, § 12 (Executors, &c.).

2. The power of the court under the Act of 1834 ought not to be restrained by mere implication.

3. A trustee should not be deprived of his compensation, &c., for a mistake of judgment.

May 7th 1869. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ. Read, J., absent.

Appeal from the Orphans' Court of *Adams county*: No. 98, to May Term 1869.

The appeal in this case was by George Myers and John Myers, executors, &c., of Jacob Myers, deceased, from the decree of the Orphans' Court, reforming their administration account on a bill of review.

The testator died in August 1865, leaving a widow and six children, and the children of a deceased daughter, who had been married to William Kohler. He left a will dated May 26th 1862, by which, amongst other things, he directed as follows:—

"First and foremost, I order and direct that my farm with mansion-house be appraised by three substantial freeholders of the neighborhood, and the small property I now reside upon, may be together with the mansion farm appraised, or they may be taken separate, provided there can be more money made out of them, this I leave to the discretion of my hereinafter named executors.

"I order and direct that my son John Myers shall have the first choice to take the farm with the mansion-house at the appraisement, in connection with the property I reside upon, if so appraised together, or separate, he may elect to both; and if he does decline to do so, then my son George Myers shall have the next choice to take the same upon the same offer, and should both decline to take it, then I order that it be sold as above directed, that is together, or separate, and be sold for cash; and should it be taken at the appraisement by any of my two sons, the same must be cash. I order and direct that the one-third of my entire real estate shall remain in said real estate for the use of my dear wife, should she survive me, the interest of which shall be paid to

her during lifetime annually." * * "I order and direct that all the money arising from my personal and real property, after charges and expenses are deducted, so remaining, shall be equally divided amongst my children, share and share alike," &c. * * " I order and direct the share coming to my daughter Nancy, now intermarried with Michael Nagle, shall be put in trust for her, during her lifetime, and the interest arising from the money of said share, after deducting costs of said trust, shall be paid to her annually during her lifetime, and after her death to be divided and go to her issue. And I direct that my daughter Nancy may make choice of any person as trustee, in whose hands I order my executors to pay over said share or money." * * "I order and direct the share of my daughter Lucy Ann, (now dec'd,) who was intermarried with William Kohler, shall remain in the hands of my hereinafter named executors, who are directed to pay to her children their several shares out of such share as they become of age, if they are not of age at or after my demise, and said executors shall stand as guardians for such as are minors, until they come to their proper age." * * "And I declare this my will and testament, *and in and the same of which* wish to have carried out after my demise, and for the same, I nominate, &c., George Myers and John Myers, my sons, to be my executors, to all intents and purposes, and to be vested with all the powers appertaining to the office of executors, to carry into force and effect this my last will and testament."

The will was proved September 2d 1865, and on the same day the executors made an appointment of appraisers by the following instrument:—

" We, George Myers and John Myers, executors of the last will and testament of Jacob Myers, &c., deceased, hereby appoint Christian Zinn, John Stock and Michael Swartz, three substantial freeholders of the neighborhood, appraisers of the real estate of the said Jacob Myers, deceased, in pursuance of authority and directions given in the last will and testament of the said deceased."

The appraisers having been sworn to make a just appraisement, made the following :—

" A true and perfect inventory and just appraisement and cash valuation of the real estate of Jacob Myers, late of Hamilton township, Adams county, deceased, 158 acres and 57 perches, neat measure, of land, valued at $50 per acre, with improvements, situate, &c. Valuation amounting to $7917.81¼.

" Taken and appraised by us, this ninth day of September, A. D. 1865."

John Myers, by the following paper, elected to take the real estate :—

[Myers's Appeal.]

" I, John Myers, one of the sons and legatees named in the last will and testament of Jacob Myers, deceased, hereby elect to take all the real estate of my said father, at the valuation and appraisement made thereof, as hereinbefore set forth and upon the terms directed in the said will, hereby binding myself to comply with the terms and mode of payment directed in said will."

This was executed by him under his seal, September 15th, 1865, and witnessed by Moses McClean and William McClean, Esqs., who appear to have been his counsel.

No notice appeared to have been given to the other legatees of the making of the appraisement. The appraisement was returned to the Orphans' Court by the executors, with the acceptance of John Myers, and the executors prayed the court to approve the proceedings, and have them entered on their records. Exceptions were filed by other legatees ; the husband of one of them offering for the land $1600 above the valuation.

On the 19th of March 1866, the court made a decree that the appraisement be set aside ; and refused to allow it to be entered on the records of the court. From this decree the executors appealed to the Supreme Court, but having failed to prosecute the appeal, it was dismissed.

On the 20th of July 1866, the executors filed their account, charging themselves with $8637.72 of which the sum of $7917.81 was stated to be the value of the real estate as ascertained by the above appraisement; the real estate having been taken by John Myers under the will, &c.

They took credit for $2639.27, the one-third of the valuation retained for the widow, $60, counsel fees and $250 their compensation as executors. This account was confirmed on the 26th of August 1867.

On the 21st of May 1867 a number of the legatees presented a petition for a review of the account, specifying the above-mentioned items as errors.

The court (Fisher, P. J.) ordered the review and struck out all the items specified, saying that as the executors had not faithfully executed their trust, they were entitled to no compensation.

From the decree of the Orphans' Court the executors appealed to the Supreme Court; and assigned for error : 1st and 2d. Striking out the items relating to the real estate ; and 3d and 4th. Striking out the items relating to the expenses of the accountants.

*S. Hepburn, Jr., W. McClean* and *F. Watts,* for the appellants.

*E. B. Buehler* and *R. G. McCreary,* for appellees.

The opinion of the court was delivered, July 6th 1869, by
SHARSWOOD, J.—The terms of the 12th section of the Act of

[Myers's Appeal.]

February 24th 1834, Pamph. L. 75, are very comprehensive.   It provides that "all powers, authorities and directions relating to real estate, contained in any last will, and not given to any person by name or description, shall be deemed to have been given to the executors thereof; but no such power, authority or direction shall be exercised or carried into effect by them, except under the control and direction of the Orphans' Court having jurisdiction of their accounts." It was evidently intended, as the revisers themselves say, to prescribe "a general rule:" 2 Parke & Johns. Dig. 753.   Where a power was given in a will, but no one designated by whom it should be exercised, it was always a nice and doubtful question whether it should devolve upon the heir at law as trustee or upon the executor.   It certainly was not universally true that it was vested in the executor, even when the heir at law was a minor.   It is only when the distribution or management of the fund produced by a sale is expressly confided to the executor that the power is implied to be in him: Patton v. Randall, 1 Jac. & Walk. 196; Boshart v. Evans, 5 Whart. 561; Sugden on Powers, 1st Am. ed. 167; 6th Eng. ed. 133.   Where a testator devised an estate to his wife for life, and directed that after her decease it should be sold to the highest bidder by public auction, and the money arising from such sale be disposed of among certain persons named in his will, and he appointed his wife and another person executors, it was held that the power was not given by implication to the executors, because they had nothing to do with the produce of the sale nor any power of distribution with respect to it: Sugden on Powers, 1st Am. ed. 172; 6th Eng. ed. 138; Bentham v. Wiltshire, 4 Madd. 44.   It may perhaps be fairly inferred that the power of sale contained in the will of Jacob Myers is impliedly vested in his executors.   For although there is no express direction to them to distribute the proceeds, yet the testator has provided that all the money arising from his personal and real property shall be equally divided amongst his children.   The produce of the sale of the realty is thus to be confounded with the personalty which must necessarily be divided by the executors.   Wherever this is the case the power to sell will vest in them by implication: Tylden v. Hyde, 2 Sim. & Stu. 238.   It was "to remove all doubts," as Rogers, J., says (5 Whart. 561), that the legislature passed the Act of 1834.   All powers in last wills, not given to any person by name or description, are to be exercised by the executors under the control and direction of the Orphans' Court.   "Powers explicitly given," say the revisers, "must be strictly pursued, and the execution of them is subjected by the courts to the most rigorous construction; but in such cases there can be no doubt of the person intended as there may be in the cases here provided:" 2 Parke & Johns. Dig.

753. It was remarked in the opinion of this court in Houck *v.* Houck, 5 Barr 273, that "as the power of the court over the subject is a wholesome one, it ought not to be restrained by circumstances of mere implication, especially when the statute requires a designation by name or description."

Was there then in the will of Jacob Myers such a designation by name or description? We have considered maturely the argument addressed to us by the able counsel of the appellants, but it has failed to convince us. His construction is mainly based on the words "this I leave to the discretion of my hereinafter named executors." It is earnestly maintained that they apply to the whole of the paragraph to which they are appended. The argument proves too much. If the qualification applies to the whole clause, which precedes it, then it must follow that it was left to the discretion of the executors whether there should be any appraisement at all as well as who should be the appraisers. It is impossible to divide and distinguish the two things. But the direction that there shall be an appraisement is absolute and unqualified, and the subsequent provision for a sale depends upon it. If these words however are confined to the next immediate antecedent, which in grammatical strictness they ought to be, then, whether the small property on which the testator resided, and the mansion-house farm should be appraised separately or together, according as more money could be made out of them, presented a question upon which the discretion of the executors might act. The testator said in effect—I leave this to be decided by my executors, not by the appraisers. Nor do we think that the concluding words of the will can be construed to refer to the appointment of appraisers. He named his two sons to be his executors "to all intents and purposes, and to be vested with all the powers appertaining to the office of executors to carry into force and effect" his last will and testament. Clearly the appointment of appraisers was not a power appertaining to the office of executors, and we would not be justified in holding that this is a designation by description within the meaning of the statute. The control and direction given to the Orphans' Court is a salutary check in this class of cases, and it would not be right to strain any general expressions to take a case out of its purview, however far a court might go to raise an implication if no such law existed. It is certainly true that the two executors had not both an interest in having the property appraised at a low price. It was the interest of the second son that the valuation should be a fair one; that he might receive his just share of the estate if it was taken by his brother, with an election to accept it himself if he declined. Yet there was danger in it, for nothing was easier than to arrange that between the brothers, and then to steal a march upon the

[Myers's Appeal.]

other heirs. There was no evidence however that there was any such fraudulent conspiracy, and it would be wrong to ground any decree upon a mere suspicion. All that appears is undue haste, which however might be open to explanation. The will was proved, and letters testamentary issued September 2d 1865. On the same day the executors appointed the appraisers, and within one week, September 9th 1865, the appraisement was made and reduced to writing. September 15th 1865, John Myers executed a writing under his hand and seal, electing to take the property at the valuation. This was all done in due form and no doubt with the advice of counsel. Probably by the same advice a report was made of the proceedings to the Orphans' Court on the 26th September following. This could only have been upon the idea that the case was within the provision of the Act of 1834. It is now said that the executors did not ask for a confirmation, and that their only purpose was to put the appraisement and election on record. If, as now contended, the court had no jurisdiction, it certainly was a most inappropriate place to record them. They might as well have been filed anywhere else. The office of the recorder of deeds was the proper place if the simple object was what is now suggested. But in truth it was a submission to the jurisdiction of the court. Accordingly on exceptions filed, the question was heard and decided. No motion or application appears to have been made for leave to withdraw the report from file. After the decree setting aside the appraisement, an appeal to this court was entered which it appears was never prosecuted. In our view of the law, the Orphans' Court had control and direction of the execution of this power; the case was within their jurisdiction, and it follows that the decree was final and conclusive upon the parties. The first and second errors assigned are therefore dismissed.

We are of opinion however that the court below erred in disallowing the credits for fees paid by the accountants for legal services and advice, and in striking out all compensation. There was no evidence that we can see of actual fraud. The executors may have acted honestly with the advice of counsel, and every presumption is in their favor. The questions which arose upon the construction of the will and the jurisdiction of the court were certainly not so clear that they ought to be held unfaithful to their trust in merely acting upon what they thought and may have been advised was the will of the testator. It would be a hard measure of justice to visit a trustee with such consequences for a mistake of judgment upon points in regard to which lawyers and judges might well differ in opinion. Allowing then the credits for fees to counsel, and reducing the allowance to the executors to $50, which seems a sufficient sum for the settlement of so small a personal estate— the account will stand $719.91 on the debit and $550.68 on the

credit side, showing a balance in the hands of the executors of $169.23. The decree of the court below is modified accordingly. And now it is ordered that so much of the decree below as directs that the item of $7917.81¼ on the debit side and the item of $2639.27 together with the items of $6 and $4.50 on the credit side of the account be stricken out is affirmed, and that so much as directs the two items of $10 and $50 on the credit side to be stricken out is reversed, and that the item of $250 on the credit side for allowance to accountants be reduced to $50. That the costs of this appeal be paid by the executors from the estate in their hands, and the record be remitted to the court below for further proceedings.

AGNEW, J., dissented and filed a dissenting opinion.