162      175
e 22 SC ³423

Patrick's Estate.    Appeals of Mapel et al.

*Will—Life estate—Remainder—Representation.*

A clause in a will providing for representation in case of the death of children of the testatrix to whom a bequest in remainder is made, will be construed to apply to other bequests than the one in immediate connection with which it is used, when all the bequests are made in a single sentence and a careful consideration of the whole will shows that this construction will best effectuate the intention of the testatrix.

Testatrix, after giving legacies to her sons and daughters, provided that a legacy given to her son James for life should, upon his death, go to his surviving brothers and sisters " and the children of any that may be dead, in the proportion of the respective legacies to my said children in this will contained." Immediately following this provision and inclosed in brackets is the clause " (the children or other descendants if any of my said children that may be dead to stand in the place and receive the same amount that their father or mother would have received if living)." This is followed by a repetition of the bequest to James and by bequests to three daughters, Rachel, Ann and Louisa, with power of appointment to their children and grandchildren, and limitation over on failure to appoint. Then follows this provision : " And it is my will that if any of my said children should die leaving no lineal heir or descendant, that the legacy in this will bequeathed to such child shall, upon his or her death without lineal heir aforesaid, vest in his or her surviving brothers and sisters (named as legatees in this will) in the proportions of the legacies to them in this will contained respectively." *Held* that the parenthetic and substitutionary clause was applicable to and explanatory of the whole sentence instead of being restricted to one of the legacies, and the share of a deceased daughter passed to surviving brothers and sisters and the children of deceased brothers and sisters.

*Trustee—Commissions.*

A trustee, who, acting in good faith and with the consent of those whom he believed, not unreasonably, to be all who had an interest in the fund, has blended the trust moneys with his own, is not necessarily to be deprived of his commissions, even although his misconstruction of the will has put claimants to litigation to establish their rights.

*Trustee—Money received by cotrustee—Surcharge.*

Where a trustee has acted in good faith, and as directed by the will which created the trust, his responsibility is clearly limited to the part of the trust fund which he actually receives, and he is not chargeable with the moneys received and held by his cotrustees.

Argued Nov. 13, 1893.    Appeals, Nos. 124 and 165, Oct. T., 1893 ; No. 165, by W. W. Patrick, and No. 124 by J. J. Ma-

pel, from decree of O. C. Allegheny Co., Sept. T., 1892, No. 214, distributing estate in hands of W. W. Patrick, surviving trustee of Rachel Patrick, under will of Ann Patrick, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.   Affirmed.

Exception to adjudication of trustee's account.

The facts were found as follows by the auditing judge, OVER, J.:

"Statement: Ann Patrick died testate on the 29th day of June, 1857, after making a devise to her three sons, Robert, Andrew and W. Wallace Patrick.  She provided in her will as follows: ' The rest and residue of all my estate of whatever kind or nature that may belong to me at the time of my decease I give and bequeath to my said sons (who are hereby appointed trustees of this my last will and testament) the survivor or survivors of them and the heirs at law of said survivor upon the following trusts as to both real and personal property, to wit: That the said lands, tenements, estates and hereditaments be sold, conveyed or disposed of as my said sons, the survivor or survivors shall deem proper, and the proceeds thereof collected and realized by my said sons the survivors or survivor of them to cause to be collected and realized the proceeds of all personal and other property, and out of the proceeds of such real and personal estate to pay to my son Robert Patrick the sum of thirty thousand dollars; to my son Andrew Patrick the sum of thirty thousand dollars; to my son W. Wallace Patrick the sum of thirty thousand dollars, which sum of thirty thousand dollars each I give and bequeath to my said sons Robert, Andrew and W. Wallace, to invest for the benefit of my son James Patrick in stocks, the United States or other securities, the sum of twenty thousand dollars (which I bequeath to my son James) to be invested as aforesaid, the semi-annual or annual dividends or interest to be paid to him during his lifetime, and at his death said principal sum of twenty thousand dollars and any dividends or interest that may be due thereon to be paid to my children (his surviving brothers and sisters) and the children of any that may be dead in the proportion of the respective legacies to my said children in this will contained (the children or other descendants of any of my said children that may be

dead to stand in the place and receive the same amount that their father or mother would have received if living) which sum of twenty thousand dollars I bequeath to my said son James to be invested as aforesaid to invest in United States or state stocks or other securities for each of my said daughters Rachel Patrick, Ann Mapel otherwise Ann Patrick, Louisa Wallace otherwise Louisa Patrick, the sum of twenty thousand dollars (which sum I bequeath to each of my said daughters the semi-annual or annual interest thereof to be paid to my said daughters during the term of their natural lives for their own sole and separate use, their own receipts for the same notwithstanding coverture to be good and valid discharges for the same to my said trustees, and from and after the decease of my said daughters respectively the said sum of twenty thousand dollars each to go to the children and grandchildren of my said daughters in such shares and proportions and payable at such times and in such manner and subject to such conditions, restrictions, provisos and limitations among such children and grandchildren as either of my said daughters shall by any deed by her duly executed or by her last will and testament (notwithstanding coverture) direct, limit and appoint and in default of such direction, limitation or appointment, then said sum of twenty thousand dollars each to said daughters to pass upon the death of such daughters without such direction, limitation or appointment to her children and grandchildren in the mode and manner now provided by the laws of Pennsylvania for the descent of personal property belonging to the estates of persons dying intestate, and it is my will that if any of my said children should die leaving no lineal heir or descendant that the legacy in this will bequeathed to such child shall upon his or her death without lineal heir as aforesaid vest in his or her surviving brothers and sisters (named as legatees in this will) in the proportions of the legacies to them in this will contained respectively.  All the rest, residue and remainder of the proceeds of my estate, real and personal of every description to be added to the aforesaid legacies in this will mentioned in proportion to their respective amounts and subject to the provisions, restrictions and limitations connected with said legacies by the provisions of this will.'

"She made the following provisions as to the investing of the trust funds and responsibilities of the trustees: Directing

them ' to lend out and invest in bank or in the public stocks or
funds or in such real security as they or he shall think expedi-
ent any part of the said trust estate premises and any sum or,
sums of money which shall at any time come to their or his
hands in the execution of the trust of this my will. . . . And
I do hereby further will and declare that neither of my said
trustees hereby appointed nor either of his heirs, executors or
administrators shall be charged or chargeable with or for any
more or other moneys than the same trustees or trustee respec-
tively or their respective heirs, executors or administrators
shall certainly receive and which shall actually pass into their
hands respectively notwithstanding he or they may give or sign
or join in giving or signing any receipt or receipts for the sake
of conformity and that neither of them shall be answerable or
accountable for the other but each for himself and for his own
acts, receipts, neglects and defaults only and that neither of
them nor the heirs, executors, administrators of either of them
shall be answerable or accountable for any banker or broker
with or to whom or in whose hands any part of the said trust
estate or monies shall or may be at any time entrusted, paid or
deposited for safe custody or other execution of the trust of
this will nor for any other loss, misfortune or damage which
may happen to the said trust estate or monies or any part
thereof in the execution of the aforesaid trust or relating thereto
unless the same shall happen by or through his or their willful
or gross neglect or default.'

" Rachel Patrick died on Jan. 30, 1882, intestate, unmarried
and without issue. Two brothers, W. W. Patrick and James
Patrick, and one sister Mrs. Louisa Wallace, survived her.
James Patrick died Feb. 20, 1892; Robert Patrick died May 2,
1873, without issue; Andrew Patrick died March 8, 1892,
leaving three daughters, Jennie P. Montgomery, Anna P. May
and Mary P. Thomas; Ann Mapel died Jan. 14, 1864, leaving
four children, John H. Mapel, A. P. Mapel, Rachel Brown and
Mary A. Gordon. This account is filed by W. W. Patrick as
sole surviving trustee of Rachel Patrick's legacy. Numerous
exceptions have been filed to it by the children of Andrew Pat-
rick and Mrs. Ann Mapel. It is claimed by accountant that
the exceptants under the will of Ann Patrick, deceased, have
no interest in the trust fund and his counsel filed a motion to
dismiss their exceptions for that reason.

"Opinion: It is conceded that under the will of Ann Patrick, deceased, Rachel Patrick took only a life estate with remainder over to the persons named in the will. It is contended, however, by counsel for accountant that these exceptants are not remainder-men, have no interest in the fund in his hands and therefore their exceptions should be dismissed. As the limitation over is to the surviving brothers and sisters of Rachel Patrick, this position is well taken unless, (1) the will substitutes the exceptants in place of their deceased parents; and (2) the period of survivorship refers to the death of the legatee for life and not to the death of the testatrix.

"(1) The will provides that the legacy given to James Patrick for life shall, upon his death without issue, go to his surviving brothers and sisters 'and the children of any that may be dead, in the proportion of the respective legacies to my said children in this will contained.' This is a substitutionary clause as to this legacy so clearly expressed that there can be no doubt as to the intention of the testatrix. Immediately following it and inclosed in brackets is this explanatory clause: '(the children or other descendants if any of my said children that may be dead to stand in the place and receive the same amount that their father or mother would have received if living).' This is followed by a repetition of the bequest to James and by the bequests of twenty thousand dollars each to testatrix's three daughters, Rachel, Ann and Louisa for life, with power of appointment to their children and grandchildren and limitation over to them upon failure to appoint. Then follows this provision: 'And it is my will that if any of my said children should die leaving no lineal heir or descendant that the legacy in this will bequeathed to such child shall upon his or her death without lineal heir as aforesaid vest in his or her surviving brothers and sisters (named as legatees in this will) in the proportions of the legacies to them in this will contained respectively.' If the substitutionary bracketed clause was intended only as explanatory of the limitation over to James's legacy, then as to the legacies given to the daughters for life, there is no substitutionary clause. If it was so intended however, it was entirely unnecessary, as the testatrix, in limiting over his legacy, provided specially for the children of his deceased brothers and sisters. And unless the parenthetical clause

is to be treated as mere surplusage it must be construed as a general substitutionary clause applicable to the limitation over of all the life legacies.   The fact that there is no apparent reason why there should be any difference between the limitation over of James's legacy and the daughters' favors this construction.   It will be observed that, by the punctuation of the will, the parenthetical clause, the gift of the life legacies, and their limitations over are all included in one sentence.   In the clause at its close, following the bequests to the daughters, it is provided that if any of the children should die leaving no descendants that such child's legacy 'shall upon his or her death' vest in the surviving brothers and sisters.   It is evident from the use of the word 'his,' that this clause refers to James's legacy as well as to the daughters'.   This shows that the will is correctly punctuated, and that the bequests to James and the daughters, the limitations over and the parenthetical substitutionary clause are to be read and construed as one sentence.   It is very probable that the reason the bequest to James was not included in the same clause with the daughters was because the power of appointment among his children was not given to him as it was to them.

" The definition given in Worcester of a parenthesis is, 'a series of words inserted in a sentence for explanation having no grammatical connection with those which precede or follow.' And by Webster, 'a word or sentence inserted by way of comment or explanation in the midst of another sentence of which it is independent in construction and which is complete without it.   It is usually inclosed in curved lines.'   If then the clauses in this will bequeathing the life legacies and providing for their limitation over are to be construed as one sentence, the parenthetical substitutionary clause is explanatory of the general limitation over and should be read as if it followed it at the close of the sentence.   And if so read, there can be no doubt that it was the intention of the testatrix that the children of any of Rachel Patrick's brothers and sisters who died before the period of survivorship referred to in the will should take by substitution the share their parents would have taken had they survived.

" (2) If the period of survivorship be the death of the testatrix then these exceptants would not be substituted for their

parents as they both survived her. The remainders although contingent would vest in them so as to be transmissible to their personal representatives: Chess's Appeal, 87 Pa. 362; and they and not the exceptants would have the right to file exceptions and participate in the distribution of the fund in the accountant's hands. The general rule is that where there is a devise or bequest for life with remainders over to survivors, the word survivors, unless the will shows a contrary intent, shall be taken to refer to the period of the testator's death: Johnson v. Morton, 10 Pa. 251; Ross v. Drake, 37 Pa. 375; Barkers' Appeal, 2 Cent. R. 282; Woelpper's Appeal, 126 Pa. 562. In all of these cases, however, except the last, there was no provision made for the issue of any child of the testator who should die pending the life estate. And one of the reasons for the rule given in Ross v. Drake and Johnson v. Morton is ' that it prevents the disinherison of a testator's descendants by the unanticipated death of their immediate ancestor, between the death of the testator and the time fixed for the distributive enjoyment.' That reason does not apply here if our construction of the parenthetical substitutionary clause be correct, and this case seems to be ruled by Woelpper's Appeal, supra. There the testator directed a trustee to pay the income of a share to each of his daughters for life, ' and from and immediately after the decease of my said daughters respectively, and as that event happens, I give and bequeath the estate and property of the daughters dying, which shall then be held by the said trustee under this my will, to be equally divided among the surviving brothers and sisters, and the lawful issue of such as may be dead (if any), . . . . provided, however, that if my said daughters or either of them should die leaving lawful issue, the share of such daughter so dying shall go to and be equally divided among such issue and the lawful issue of such as may be dead.' And it was held by Mr. Justice MITCHELL, in an opinion reviewing all the authorities, that the period of survivorship was the death of the life tenant and not of the testator. Here, as there, there is a contingent limitation over upon the death of the life tenant to the surviving brothers and sisters, and the children of any who are deceased are substituted in their parents' place. These cases seem to be ' at all fours,' and it fol-

lows therefore that the words of survivorship here refer to the death of Rachel Patrick, the legatee for life. These exceptants are then entitled to the shares of the fund for distribution their parents would have taken had they survived Rachel Patrick, and the motion to dismiss their exceptions is overruled.

" The accountant charges himself with $30,194.37, amount received from the executors of Ann Patrick, deceased, and with interest thereon from July 30, 1882, at 4 per cent, amounting to $11,977.82. There was set apart by the executors of Ann Patrick for Rachel Patrick, under the trust in the will, $35,082.80. Exceptants claim that the accountant should be charged with this amount, and also with interest from the death of Rachel Patrick, Jan. 30, 1882, at 6 per cent per annum.

" The accountant testifies that he only received the amount with which he charges himself, and that his cotrustees, Andrew and Robert Patrick, received the balance. He said : ' Both being considerably short, the heirs, as I understand, agreed and allowed so much from each one to make that up and put them in a better shape.' It is not alleged that these exceptants were parties to this arrangement, and they would therefore not be bound by it. The accountant knew that the money was kept by his coexecutors and trustees to make up a deficiency in their accounts ; he made no demand upon them for it, nor investigation as to the loss, and took no steps to secure it. They are now deceased, and it is very doubtful if the money can be recovered from their estates. And if this were an ordinary trust he no doubt would be liable to the exceptants for it. The will, however, makes each trustee liable only for money which he shall certainly receive and which shall actually pass into his hands, and relieves each from responsibility from loss to the trust estate unless ' the same shall happen through his or their willful or gross neglect or default.' As the accountant seems to have acted in good faith, supposing that all parties interested in the fund consented to the arrangement, it cannot be said that he has been guilty of willful or gross neglect or default. He cannot therefore be held liable for this loss. But as he used the trust fund in his banking business prior to and since the death of Rachel Patrick, the exceptants have the option to claim either 6 per cent interest or the profits realized from it. They claim the interest, which will be allowed from the date of her death. . . .

" Exceptions are also filed to the allowance of the credit of $1,811.65 claimed for commissions. Had the accountant acted in bad faith in not filing his account within a reasonable time after the death of Rachel Patrick, these exceptions no doubt should be sustained. He does not appear to have been requested to file it by any of the living brothers or sisters of Rachel Patrick, and he was evidently honest in his belief that these exceptants were not interested in the trust. They slumbered on their rights for ten years, and their inaction indicates that for some time at least they supposed they were not interested. He has had charge of the fund since the death of Rachel Patrick, is responsible for it, and has been charged with interest thereon. It is true he used it in his banking business, but the estate has been benefited thereby, as it is very doubtful if six per cent interest could have been realized from securities designated by the statute. It is evident he acted in good faith, and it would be a harsh rule that would deprive him of compensation. Five per cent commissions on the corpus of the trust fund seems to be reasonable compensation, and is allowed."

The auditing judge awarded one sixth of the balance for distribution to the children of Ann Mapel, and one fourth to the children of Andrew Patrick.

Exceptions were filed by the accountant to the awards to the children of Ann Mapel and Andrew Patrick. Exceptions were filed by the children of Ann Mapel and Andrew Patrick to the refusal to surcharge and to the allowance of commissions. The exceptions were dismissed.

*Errors assigned*, in each appeal, were dismissal of exceptions, quoting them.

*Thomas C. Lazear* and *H. A. Miller, C. P. Orr* with them, for accountant.—Under the bequest the period of survivorship relates to the time of the death of Rachel Patrick, after the death of testatrix, and not to the death of testatrix: Woelpper's Ap., 126 Pa. 562; Jessup v. Smuch, 16 Pa. 327; Target v. Gaunt, 1 P. Wms. 432; Hawkins on Wills, 251; Theobald on Wills, 508.

The limitation over is only to the surviving brothers and sisters: Target v. Gaunt, 1 P. Wms. 432; Eichelberger v. Bar-

nitz, 17 S. & R. 293 ; Diehl v. King, 6 S. & R. 29 ; Mifflin v. Neal, 6 S. & R. 460 ; Scott v. Price, 2 S. & R. 59; Seibert v. Butz, 9 Watts, 490 ; Bedford's Ap., 40 Pa. 18 ; Varner's Ap., 87 Pa. 422 ; Bainbridge's Ap., 97 Pa. 482 ; Crooke v. De Vanders, 9 Vesey, Jr., 197 ; Wilson v. Eden, 11 Beav. 289 ; Newbold v. Boone, 52 Pa. 167.

Accountant was entitled to his commissions : Ahl's Ap., 129 Pa. 26 ; Miller's Ap., 8 Atl. R. 864.

*Thomas Patterson, Edwin Z. Smith, John H. Jordan* and *Knox & Reed* with him, for appellants, children of Ann Mapel and Andrew Patrick, cited, as to award to their clients : Morrison v. Truby, 145 Pa. 540; Biddle's Ap., 28 Pa. 59; Mickley's Ap., 92 Pa. 514; Fitzwater's Ap., 94 Pa. 141; Stevenson v. Fox, 125 Pa. 568; Johnson v. Morton, 10 Pa. 245; Ross v. Drake, 37 Pa. 373 ; Barker's Ap., 2 Cent. R. 282; Woelpper's Ap., 126 Pa. 562.

As to allowance of commissions : Norris's Ap., 71 Pa. 114; Geiger's Ap., 24 W. N. 264; Seguin's Ap., 103 Pa. 139; Robinett's Ap., 36 Pa. 174; Clauser's Est., 84 Pa. 51.

As to the surcharge asked for : Wilson's Ap., 115 Pa. 101; Stell's Ap., 10 Pa. 152; Hall v. Boyd, 6 Pa. 270 ; Irwin's Ap., 35 Pa. 296; Ducommun's Ap., 17 Pa. 270; Haage's Ap., 17 Pa. 190 ; Hengst's Ap., 24 Pa. 413; Pim v. Downing, 11 S. & R. 66, as cited in Wilson's Ap., above.

OPINION BY MR. JUSTICE McCOLLUM, July 11, 1894:

The real question for consideration on the appeal of W. W. Patrick is whether the legacy to Rachel Patrick passed at her death to her surviving brothers and sister, or to them and the children of her deceased brother and sister. The contention of the appellant is that the surviving brothers and sister take the whole of it, while the appellees claim that the children of the deceased brother and sister take such share of it as their parent would have taken if living. The learned orphans' court adopted the latter view, and distributed the fund in accordance with it. This fund was created by and held in trust under the will of Ann Patrick, the income of it was paid to Rachel Patrick during her life, and we are now to inquire whether it was distributed in conformity with the provisions of the will by

which it and the trust were established. In a single sentence of her will the testatrix gave legacies to all her children, and in that sentence we find in brackets these words, " the children or other descendants if any of my said children that may be dead to stand in the place and receive the same amount that their father or mother would have received if living." ˙If this parenthetical and substitutionary clause is restricted to the legacy or share given to her son James, the appeal now under consideration must be sustained; but if it is applicable to the legacy or share bequeathed to her daughter Rachel, the appeal must be dismissed. The clause in question follows the bequests to the sons and precedes the bequests to the daughters, and it is contended by the appellant that from its position in the sentence it must be limited to the bequest to James.

In considering this contention we notice, first, that it strikes the substitutionary clause from the sentence and renders it wholly inoperative in the construction of the will. The insertion of this clause was not necessary to enable the testatrix's grandchildren to take the place of their parents in the distribution of the share bequeathed to James. This position was already secured to them in the disposition of his legacy or share in the event of his dying without issue. Clearly, with or without the substitutionary clause, they could have taken their parent's proportion of his share under the will. We notice also that in order to harmonize the concluding part of the sentence with the construction contended for by the appellant it is necessary to maintain that the words "any of my said children," as used therein, do not include James, although all the testatrix's children are named as legatees in the preceding part of it. It is worthy of note too, that this construction discriminates indirectly at least against the grandchildren who are without parental assistance and protection. The soundness of a construction which involves such a discrimination, makes one part of the sentence mere surplusage and˙writes an exception into another part of it, may well be questioned, especially where, as in this case, the testatrix in referring to the children or other descendants of her deceased children appears to have regarded the former as in the place of the latter in respect to the property bequeathed by her. We think therefore that the reasonable and true construction of the will in

question is that adopted by the learned orphans' court. It is a construction which conforms to the obvious intention of the testatrix in disposing of her property, and renders every part of her will intelligible and operative. It makes the parenthetical and substitutionary clause applicable to and explanatory of the whole sentence instead of restricting the same to one of the seven legacies mentioned therein.

In the appeal of J. J. Mapel the matters complained of are the allowance to the accountant of commissions on the corpus of the fund and the refusal to surcharge him with money received and appropriated by his cotrustees. The allowance of the commissions is resisted on the ground that the accountant blended the trust moneys with his own in the business of banking, and it is contended that this action on his part must be regarded under our decisions as a bar to his claim for compensation. But the denial of commissions to a trustee is not an inevitable sequence of his failure to keep a separate account of the trust fund. There may be circumstances affecting his administration of the trust or something in the nature or character of the services rendered by him which would make it inequitable to deprive him of all compensation: Ahl's Appeal, 129 Pa. 27. An executor who has discharged his duties faithfully and with advantage to the estate does not forfeit his commissions by merely keeping on hand larger amounts than the necessities of the estate require, or by placing a wrong construction upon the will, and thereby compelling persons interested to proceed against him to obtain their rights: Myer's Appeal, 62 Pa. 109; Miller's Appeal, 8 Atl. R. 864, and Foster v. Denman, 41 N. J. Eq. 47. In this case the trustee honestly supposed that he was accountable only to his surviving brother and sister for his administration of the trust. They acquiesced in his use of the trust funds and do not now complain of it. In fact it was a use by which the estate was benefited. The parties who now call the administration of the trust in question did not assert any claim upon the fund for a long time after the death of Rachel Patrick, and their inaction seemed to sanction the trustee's construction of the will. Under the circumstances of the case we think the allowance of commissions was proper.

To the accountant's misconstruction of the will and the liti-

gation and delay arising from it, the language of Mr. Justice SHARSWOOD, in Myer's Appeal, supra, is applicable. In delivering the opinion of this court he said : " There was no evidence that we can see of actual fraud. The executors may have acted honestly with the advice of counsel and every presumption is in their favor. The questions which arose upon the construction of the will and the jurisdiction of the court were certainly not so clear that they ought to be held unfaithful to their trust in merely acting upon what they thought and may have been advised was the will of the testator. It would be a hard measure of justice to visit a trustee with such consequences for a mistake of judgment upon points in regard to which lawyers and judges might well differ in opinion."

We agree with the learned orphans' court that the accountant is not chargeable with the moneys received and held by his cotrustees. In clear and unmistakable terms the will limits the liability of each trustee to that part of the trust fund which he actually receives.

Decree affirmed and appeals dismissed at the cost of the appellants.