THE STATE OF CONNECTICUT *vs.* SAMUEL S. HUNTER ET AL.

Third Judicial District, Bridgeport, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The liabilities incurred under a contract of suretyship are not to be extended by implication beyond its precise terms and scope.
The approval of a probate bond, if made subsequent to the day when it was filed, relates back to that day.
A probate bond, after reciting that *A* had been duly appointed executor of *B's* will and trustee of a certain fund therein created, and

State *v.* Hunter.

had accepted said trust, provided that it should be void if *A* should "faithfully discharge the duties of his said appointment according to law." *A* had previously been acting as executor, but at the time of filing such bond rendered an account in which he charged himself with certain notes and deposits as "trustee." This bond was indorsed by the judge of probate: "Estate of *B*. Probate trustee bond. Accepted March 10, 1894." *Held:* —

1  That under our informal probate practice this indorsement must be deemed equivalent to a duly recorded decree that the bond was approved as a trustee bond.

2. That as such it bound the sureties for *A's* fidelity as a trustee only from and after the date on which it was filed in court.

The failure to have a trust fund forthcoming upon the death of the testamentary trustee, so that it can be accounted for and turned over to his successor, is in itself a breach of the trustee's bond for which his sureties are answerable.

Under such circumstances it is immaterial that the trustee was also the sole executor of the will, and had not filed his final administration account nor obtained any order for the transfer of the fund to himself as trustee.

A testator directed that his real estate should be sold at an early day, at the discretion of his executor. *Held* that this empowered the executor to make the sale, no other person being named for that purpose.

An assignment of error alleging that the trial court erred in overruling particular claims of law as enumerated and set forth in a certain paragraph of the finding, is sufficiently specific.

An appeal to this court transfers the cause here for all purposes incident to the full exercise of appellate jurisdiction.

A trial judge in making a finding for the purposes of an appeal acts as an historian, and in a clerical rather than a judicial capacity.

This court may, upon motion, allow a necessary correction of the record, where the time intervening before the opening of the term to which the appeal is taken is insufficient to enable the moving party to follow the procedure pointed out by statute.

Argued November 7th—decided December 18th, 1900.

ACTION against the sureties of a probate bond to recover damages for a breach of trust, brought to the Superior Court in Fairfield County and tried to the court, *Shumway, J.;* facts found and judgment rendered for the plaintiff for $4,146, and appeal by the defendants for alleged errors in the rulings of the court. *No error.*

The following facts appeared in the finding of the Superior Court: —

State *v.* Hunter.

The will of John Goodsell, who died in 1886, contained, among other things, the following provisions: A farm was left to his executor in trust for a brother, Lewis Goodsell, during his life. After his death it was to be sold and the proceeds to become part of a fund created by these words: "I will and direct further that as early as may be proper, at the discretion of my executor hereinafter named, all the rest of the real estate I may be possessed of at my decease shall be sold, and the avails thereof, together with the residue of my personal estate, shall be invested in a common fund, to be held and managed by my said executor as trustee, for the period of twenty years from the date of my decease, the income to be divided semi-annually, in equal sums, to the following named persons, subject to the conditions and limitations hereinafter expressed."

Lewis Goodsell was one of nine persons thus named, and the following provision was made as to his share in the principal of the fund:

"If my said brother shall be living at the time of the distribution of the principal of said fund, at the end of said period, his share therein shall be held by my executor or trustee, and the income only of such share be paid over to him, the said Lewis, during his natural life."

Subject to this provision, the fund was to "be distributed" "at the end of said period of twenty years" to certain persons named. Rowland B. Lacey was appointed executor.

The will was probated, and in March, 1886, Lacey qualified as executor and filed a probate bond as such.

In 1887, he sold part of the real estate for $5,689.73. All the personal estate was used in paying debts and legacies. There is no order of the Court of Probate on record setting over the avails of said sale to any trustee. In 1888, Lacey rendered an account to the Court of Probate, headed "Estate of John Goodsell, deceased. R. B. Lacey in account with fund for heirs under the will," and signed "R. B. Lacey, Trustee."

In this account he debited himself with $5,689.73 as the net proceeds of said sale of real estate, and also with certain

income; credited himself with payments of said income to the nine beneficiaries designated in the fourth clause of the will, and charged himself with the possession of assets as follows: —

| | |
|---|---:|
| "Deposit in City Savings Bank, Bridgeport, . | $ 800.00 |
| George B. Mills, Westport, note secured by mortgage . . . . . . | 750.00 |
| R. B. Lacey, Bpt., note $1,500 and mortgage purchased of S. S. Hunter to cover, . | 1,425.29 |
| M. L. Hunter note, $2,000, and mortgage to cover, . . . . . . | 1,902.25 |
| Eli L. Goodsell note against his interest, | 632.19 |
| Herman B. Goodsell    "    "    " | 180.00 |
| | $5,689.73 " |

He rendered no further account in relation to the proceeds of said real estate until February 28th, 1894. He then rendered an account headed "R. B. Lacey, Trustee, in account with Legatees under the will of John Goodsell, deceased," and signed "Rowland B. Lacey, Trustee." In this he debited himself with income received to that date, and credited himself with income paid to said nine beneficiaries. He also annexed thereto a statement designated, "Assets of Fund," and reading as follows: —

| | |
|---|---:|
| "Deposit in Bridgeport City Savings Bank, . | $ 520.00 |
| George B. Mills, note and mortgage, . | 750.00 |
| M. L. Hunter, note and mortgage, . . | 2,000.00 |
| Note and mortgage in favor of S. S. Hunter assigned to R. B. Lacey, Trustee, etc., . . | 1,600.00 |
| Eli L. Goodsell, note and interest to December 10th, 1893 . . . . . . | 694.68 |
| Herman B. Goodsell, note and interest to December 10th, 1893, . . . . . | 188.96 |
| | $5,753.44 " |

On or about February 28th, 1894, the defendants and Lacey executed and caused to be lodged with the Court of

Probate the bond in suit, the condition of which was as fol-·
lows : " Whereas the said Rowland B. Lacey has been duly
appointed by the last will and testament of John Goodsell,
late of Westport, in said district, deceased, executor thereof
and trustee of a certain fund therein created, and said will
has been approved by said court, and has accepted said trust:
Now, therefore, if the said Rowland B. Lacey shall faithfully
discharge the duties of his said appointment according to law,
then this obligation shall be void, otherwise to remain in full
force."

Between February 28th, 1894, and his decease on March
31st, 1897, said Rowland B. Lacey did not render any further
account to said Court of Probate.

In and after March, 1894, Lacey withdrew the $520 from
the Bridgeport Savings Bank, leaving on deposit there at the
time of his death only $3.19. The Mills note was collected
by him, and the mortgage discharged. The note in favor of
S. S. Hunter was his own note indorsed back to him as trustee
under will of John Goodsell, deceased, or order, by the payee,
without recourse. It was executed February 28th, 1894, and
secured by a first mortgage ; but this security was released
to him March 28th, 1895. The notes of Eli L. Goodsell and ·
Herman B. Goodsell were never secured, unless by the fact
that they were beneficiaries under the trust. The M. L.
Hunter mortgage was a second mortgage, but Hunter was
financially responsible. Lacey's executor found, among the
trust fund assets, another unsecured note of Herman B. Good-
sell for $200, not mentioned in either of the probate accounts.

Upon the trial of the case the plaintiff's counsel disclaimed
a recovery in this action for any breaches of trust on the part
of said Lacey as executor.

The defendants claimed as matter of law (1) that R. B.
Lacey did not become trustee under the will until the bond
in suit was approved by the Court of Probate ; (2) that the
investments made by Lacey of the proceeds from the sale of
real estate were made by him as executor; (3) that the
breaches of duty of which said Lacey was guilty prior to the
approval by the court of the bond were committed by him

either as executor or as a private individual; (4) that the defendants are not liable for any breaches of trust which said Lacey was guilty of, prior to the approval of said bond, by reason of any obligation imposed upon them, thereby to answer for the faithful performance by said Lacey of his duties as trustee; (5) that the bond was never accepted and approved by the Court of Probate; and (6) that the return filed by R. B. Lacey on February 28th, 1894, charges him with specific items therein contained, and not with the sum of $5,753.54. All these claims were overruled.

The plaintiff claimed as matter of law that Lacey was chargeable with the sum of $5,689.73, received from the sale of real estate and constituting a trust fund under said will, and that as only $3.19 of this amount was forthcoming so as to be turned over in properly invested funds to Benjamin F. Squires, who succeeded Lacey as trustee under said will, and as the deficiency was due to the acts of Lacey as trustee, the defendants were liable for the deficiency of $5,686.54, together with semiannual compound interest thereon from December 10th, 1896, to the date of judgment, less, however, the dividends paid to said Squires from the insolvent estate of said Lacey, with compound interest computed thereon semi-annually in like manner.

The court allowed the defendants credit for the $2,000 M. L. Hunter note, and did not compute the interest with semiannual rests.

This appeal was taken on May 1st, to the term of this court which opened on June 5th, 1900. On May 24th the appellee was notified by the trial judge that he proposed to alter the finding in respect to the statement of what claims it had made on the trial. The appellee protested against it, but the alteration was made and the finding refiled on May 29th.

On June 2d the appellee filed a motion in this court asking it to correct the record by erasing the alteration, or else to continue the cause to enable it to prove in proper manner what was the fact as to the matter which was the subject of the alteration.

*William D. Bishop, Jr.*, and *Arthur M. Marsh*, for Zalmon Goodsell et al. (appellants).

*Jeremiah D. Toomey, Jr.*, for Patrick Coughlin (appellant).

*George P. Carroll*, for the appellee (the plaintiff).

BALDWIN, J. The bond in suit recites the fact that Rowland B. Lacey has been duly appointed by the will of John Goodsell, executor thereof and trustee of a certain fund therein created, and has accepted said trust; and then provides that it is to be void "if the said Rowland B. Lacey shall faithfully discharge the duties of his said appointment according to law," but otherwise good. This action is against the sureties alone. The contract of suretyship is construed strictly, and the liabilities following from it cannot be extended by implication beyond its precise terms and scope. *Bulkeley* v. *House*, 62 Conn. 459, 470. The defendants, therefore, cannot be held to answer for any breaches of duty committed by Lacey prior to the delivery of the bond.

At its date, February 28th, 1894, he held two positions, with reference to the will of John Goodsell. He was its sole executor. He was also acting as trustee under it of a part of the estate, which had been set apart as a special trust fund. In this latter capacity he filed, on the day named, an account of his trust, in the Court of Probate, containing a statement of the trust assets. This included several items, to each of which a value was separately assigned, and the sum of which by a correct addition was given as $5,753.44.

The bond was filed on or about its date and duly recorded. The judge of probate indorsed upon it "Estate of John Goodsell. Probate Trustee Bond. Accepted March 10, 1894. Recorded Vol. 12, Page 229." This memorandum, under our somewhat informal probate practice, must be deemed equivalent to a decree, duly recorded, to the effect that the bond was accepted and approved as the probate bond of Rowland B. Lacey, as trustee of the special fund created by the will. It bound the signers, therefore, only for his future fidelity as such trustee.

The original amount of the special fund to be held in trust was $5,689.73. By his account rendered February 28th, 1894, it is stated as then being $5,753.44. For that sum he was bound to account annually before the Court of Probate. General Statutes, § 498; *Prindle* v. *Holcomb*, 45 Conn. 111, 119.

He was also bound to account for that sum, should he cease to be trustee, to his successor in office, or to leave the fund, in case of his decease, in such a condition that his executor or administrator could account for it.

These obligations he did not fulfill. He filed no annual accounts during the three years that elapsed before his decease; and he left the fund, at his death, so impaired, that his executor was able to turn over to his successor in the trust little more than a third of its original amount. The deficiency, therefore, their bond holds the defendants to make good. *State* v. *Howarth*, 48 Conn. 207, 213; *Crocker* v. *Dillon*, 133 Mass. 91, 99.

It is immaterial that the Goodsell notes were never proper securities in which to invest trust funds, and so that he had failed in duty, either as an executor or as trustee, in respect to them, before the bond was given. Had the attention of the Court of Probate been called to their character when the account of 1894 was filed, its duty would have been to require him to substitute other securities to the same amount. Had accounts been filed in 1895, 1896 and 1897, as the law required, another opportunity would have been afforded for the examination by the court and the parties interested, of the items of credit, and might have led to similar action to that which should have been had on the former occasion.

But it is enough, if it stood alone, to justify the judgment, that the full amount of the fund was not left, at Lacey's decease, to come into the hands of his personal representatives for delivery to his successor in the trust. *Merrill* v. *Phelps*, 34 Conn. 109, 112; *Foster* v. *Wise*, 46 Ohio St. 20, 16 Northeastern Rep. 687.

The judgment is based upon the assumption that the sum originally realized, in 1887, from the sale of real estate, namely, $5,689.73, was the amount for which Lacey, as trustee, was

accountable. His account of February 28th, 1894, which showed an increase in the fund to $5,753.44, was the true starting point in computing the deficiency for which the defendants were responsible; but the failure to adopt it was for their advantage, and they cannot complain of it.

It is assigned for error that the Superior Court held that Lacey became trustee under the will before the approval of the bond by the Court of Probate. His appointment as trustee came from the testator. The bond recites that he had already accepted it. Whatever might have been the position of the obligors, had the bond not been approved by the court, an order of approval was in fact made on March 10th, and related back to the time when the paper was filed in court; thus making Lacey fully the trustee under the will from and after the latter date.

It was of no importance that he never filed a final administration account nor obtained an order for a transfer of the proceeds of the sale of real estate to himself as trustee from himself as executor. That might be material in a suit upon the probate bond which he filed originally, upon his qualification as executor. It cannot help the sureties on his second bond, which was given and accepted to secure his proper management of the trust fund.

The testator directed that the real estate should be sold at an early day, to be determined at the discretion of his executor. This empowered the executor to make the sale, no one else being named for that purpose. Whether the provision that the proceeds should "be invested in a common fund to be held and managed by my said executor, as trustee, for the period of twenty years," imports that Lacey should make the investments as executor or as trustee, is immaterial to the disposition of this cause. He was accountable for the whole amount of the fund, however it might have been invested. The overruling, therefore, of the defendants' claim that he acted in that respect as executor did them no injury.

The other reasons of appeal have been already shown to be insufficient or unfounded.

The appellee claims that none of the reasons of appeal were

sufficiently stated, within the rule. Rules of Court, ed. of 1899, p. 94, § 13.

The sole assignment is that the court errred " in overruling the 1st, 2d, 3d, 4th, 5th and 6th claims of law stated in paragraph 29 of the finding." This indicates fairly and fully the particular points of law which the appeal was designed to raise. It would have been mere prolixity to make six separate assignments of error; nor would anything have been gained by the formal statement that the court erred in overruling each of these claims of law, respectively. That was what the assignment obviously meant, as it stands.

The appellee also complains that its claims of law are inaccurately stated in the finding, and asks a correction at the hands of this court.

The finding was filed on Tuesday, May 29th. Under Public Acts of 1897, p. 889, § 8, the appellee had until Tuesday, June 5th, in which to move in the Superior Court for its correction by the trial judge. But on Tuesday, June 5th, the term of this court to which the appeal had been taken was to open, and it would be at least doubtful if such a motion could be considered and disposed of in season to put the record in its final form for submission to us upon that day.

An appeal, as soon as it is perfected, transfers the cause to the appellate court for all purposes incident to the full exercise of appellate jurisdiction. *Huntington* v. *McMahon*, 48 Conn. 174, 195; *Vincent* v. *McNamara*, 70 id. 332, 339. If the record of the proceedings in the court below is at the time so complete as to present sufficiently the questions of law which the appellant desired to raise here, it only remains for the clerk to certify and transmit it. If it is not thus complete, it remains for the clerk or the trial judge, as the case may be, to supply whatever is necessary. Such services, on the part of the clerk, will be simply clerical. On the part of the judge they will also be clerical rather than judicial. *Johnson* v. *Higgins*, 53 Conn. 236, 237. His object will be to state for record such facts and events as may have led up to the judgment and are necessary to show whether the appellant is right or wrong in claiming that the law has been transgressed

to his injury during the progress of the cause.   He acts as an historian.   So far as statutes may authorize, or the permission of this court, expressed in terms or implied by practice, may extend, he can rectify his finding, if in any respect it be incomplete or incorrect, pending the appeal.   *New Haven Savings Bank* v. *McPartlan*, 40 Conn. 90, 92.   It can also be rectified by authority of this court.   The ordinary procedure to obtain such action here is prescribed in the Public Acts of 1897, p. 891, § 12.   This section is an application to all appeals of a rule of practice as to motions for a new trial which had been previously formulated and adopted by this court.   Practice Book, p. 260, § 5.   Its provisions are directory in their nature.   In the case at bar, the appellee could not comply with them.   It could not have given the appellants twelve days' notice, prior to June 5th, of its intention to correct an error in a finding which was filed on May 29th.   Had it been necessary, therefore, for the support of the case on appeal, to make the correction for which it moved before this court on June 2d, we should have accorded it an opportunity to be heard upon the merits of that motion.   But as we hold it to be immaterial whether the defendants are liable for defaults which may have been committed by Lacey as executor, the correction, if the plaintiff is entitled to it, is not needed for its protection.

There is no error, and the motion of the appellee to rectify the appeal is denied.

In this opinion the other judges concurred.