### PIERCE v. DAHLGREN.

(Circuit Court of Appeals, Sixth Circuit. April 1, 1924. On Application for Rehearing, June 13, 1924.)

No. 3950.

**1. Trusts ⬅⮞222—Loans of trust funds by trustee to herself and her brother, secured by pledges of their interests, held improper.**

Where will provided for distribution of trust fund on death of named person to persons entitled under the laws of intestacy at the time of the distribution, loans by the trustee, who was also a beneficiary, to herself and another beneficiary, secured by pledges of their interests, were improper, since such interests were uncertain.

---

⬅⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Trusts ⊙=222—Trustee held required to restore amount of trust fund loaned to herself and brother, though listed in approved report.**

Trustee is not relieved of obligation to restore portion of trust fund loaned to herself and her brother, secured by pledges of their uncertain interests in trust fund, because such loans were listed in annual report approved by court, where entries designated the security as "mortgages."

**3. Trusts ⊙=222—Facts held not to justify trustee's loan of trust funds to herself.**

The mere fact that a daughter, who succeeded her mother as trustee, borrowed money on her own note and mortgage to put into the trust fund to avoid litigation over a claim that her mother was not entitled to credit as trustee for certain amounts, did not justify daughter's loan of an equal amount to herself without adequate security and make it unnecessary for her to replace amount borrowed.

**4. Trusts ⊙=321—Trustee held entitled to compensation, notwithstanding loans made without adequate security.**

A trustee, who in good faith and under advice of counsel made a loan of trust funds to herself and her brother, secured by pledges of their future uncertain interest in trust fund, should not by reason thereof be denied compensation as trustee, if she or her surety, within a reasonable time to be fixed by the court, restores the amounts to the fund.

**5. Trusts ⊙=321—Trustee held entitled to compensation, notwithstanding failure to file reports during certain periods.**

Trustee's failure to file accounts during a nine-year period *held* not fatal to her claim for compensation, where litigation was pending during such period and all parties acquiesced in delaying a further account until its proper basis was determined.

Appeal from the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Supplementary proceeding by Ulrica Dahlgren Pierce, trustee, in which exceptions were filed by John V. Dahlgren, Jr., to the trustee's report. From an order sustaining exceptions, the trustee appeals. Order modified, and case remanded, with directions.

Nichols, Morrill, Stewart & Ginter, of Cincinnati, Ohio, and O'Rear, Fowler & Wallace, of Frankfort, Ky., for appellant.

Lawrence Maxwell, of Cincinnati, Ohio, and Coudert Bros., of New York City, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. This appeal arises in proceedings supplementary to the controversy disposed of by this court in Dahlgren v. Pierce, 270 Fed. 507. The general history of the matter can be found there stated, and need not be repeated. Since 1864, the administration of the trust created by the will of Samuel Vinton has been under the supervision of the court below as an equity court, and pursuant to the bill then filed to have a trustee appointed. 270 Fed. 510. There have been several successive trustees; Mrs. Pierce, the latest and a granddaughter of the testator, was last appointed in 1907. The trustees had made annual reports to the court, which reports, after what is said to be due notice, had been confirmed. Mrs. Pierce made annual reports for each of the 7 years, ending in May, 1913. The amount of the principal of the estate seems to have been approximately $200,000, and the net income was each year distributed in four equal shares among

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the beneficiaries, descendants of the testator: (1) His granddaughter Romaine; (2) her half-sister, testator's granddaughter, Mrs. Pierce; (3) Mrs. Pierce's brother, Eric Dahlgren; (4) Eric Dahlgren, as guardian of his nephew, John V. Dahlgren, Jr., son of Mrs. Pierce's and Eric's deceased brother, John V. Dahlgren, Sr.

In 1913 Mrs. Pierce was advised that distribution of income to or for John V. Dahlgren, Jr., was not authorized under the will, but that the income should be divided into three parts instead of four. Thereupon she filed the petition, which resulted in the decision in 270 Fed., holding that the distribution to John V. Dahlgren, Jr., had been rightful and must·be continued. Pending this long controversy, from 1913 to 1921, Mrs. Pierce had not filed annual accounts as trustee. Eventually, and in 1922, she filed her eighth report, which, with a later supplement, covered the period from April, 1913, to July, 1922. It also disclosed a list of the assets of the trust, among which were notes from Mrs. Pierce amounting to $21,000 and notes from Eric Dahlgren amounting to $20,500. The account also took credit for $8,000 services as trustee for 8 years. John V. Dahlgren, Jr., who had become of age, excepted to the item charged for services and to the transactions which had resulted in the $41,500 of notes. The District Court sustained these exceptions, and directed Mrs. Pierce to make good and return to the trust these items, amounting to $49,500. From this order she appeals. The same order directed further charges against her, not involved in the appeal.

[1] The loans by Mrs. Pierce to herself and her brother we are not able to approve. The theory by which it is sought to sustain them, both under the general law as to trust investments and under the provisions of the will authorizing·investments in real estate mortgages, is that the interests of Mrs. Pierce and her brother, as beneficiaries under this will, are valuable interests, to be considered as interests in real estate, and that they were respectively pledged to Mrs. Pierce as trustee, to secure these loans. Instruments of pledge, which may be assumed to be as efficient as any such instruments could be, were duly executed, and it is said that these amount to equitable mortgages upon the real estate. It is clear that, if the will is valid according to its face, neither Mrs. Pierce nor her brother had any such interest that the pledge of it could be considered good security for investment by the trustee. By the terms of the will, upon the death of the granddaughter Romaine, all the property is to be distributed among those persons who would take and in such shares as might be provided under or by the laws of Ohio at that time, if the testator had lived until then and died intestate. The uncertainty of the interests held by Mrs. Pierce and her brother was apparent, not only because no one knew what the law of descent and distribution in Ohio would be in the future, but because the survivorship of every party was uncertain. The loans in question cannot be approved, and the District Court was right in directing that they be made good by the trustee. The will gives no power to make advancements, and the restoration of the fund cannot be indefinitely delayed on the chance that the quasi advancements may turn out to have done no harm.

[2] The fact that the loan to Mrs. Pierce and part of that to her brother were listed in the seventh annual report, which is said to have been duly approved, cannot avail. They appeared there merely as "Ohio mortgage" and "notes and mortgage." There was nothing in these entries to give fair notice that the "mortgages" were of the conditional and dubious character now revealed.

[3] Neither is relief to be had by Mrs. Pierce from liability for the loan to herself, by the circumstances under which the loan originally arose, however creditable to her in some respects that origin was. She states that her mother, who was trustee before her, had made loans or advancements from the trust property to certain of her children; that upon her mother's death there was a claim (inferably by Romaine) that the mother, as trustee, could not have credit for these amounts; and that, to avoid family litigation, Mrs. Pierce borrowed the money by mortgage upon her separate property and put the money into the trust fund. It was this same $20,000 which she afterwards took out of the trust fund again, putting in her own note and pledge therefor, and which put the loan in its present form. It cannot be claimed that this first contribution to the trust fund created any debt from it to Mrs. Pierce; to have considered it a debt would have destroyed the purpose of the contribution. We see no escape from affirming the full liability declared by the District Court on account of this loan.

[4] The $8,000 claim for compensation is upon a different basis. For some 50 years $1,000 has been allowed each year as the trustee's compensation for handling the fund. It came to be a sort of annual salary established by two generations of family consent. The accumulation of this salary for 8 years was denied to Mrs. Pierce because of her misconduct in loaning the trust funds to herself and her brother without adequate security. The strictest rules of duty by a trustee, upon which rules this disallowance was based, are not to be disparaged or relaxed; but if an unlawful loan is made by a trustee in good faith and under advice of counsel, and does not result in any loss to the fund, we do not think the trustee should be penalized and the beneficial estate increased for this reason alone. Good faith is an elastic term, but Mrs. Pierce's conduct may be brought within it by no undue expansion. She and Romaine and their brother Eric each had children. Their brother John had died leaving one child, an infant. It was natural for Mrs. Pierce to think of herself as entitled absolutely to at least one-fourth of the trust upon distribution, with such chances of increasing her share to one-third as might come from the disappearance of the single life interest in one of the quarters. It was natural to think of her brother Eric as owning the same share of the trust. In fact, it now seems that any chain of events which will cause Mrs. Pierce and her children to fail eventually to be owners of one-fourth of the trust is very unlikely. There would, therefore, be two expectant interests, of about $45,000 each, against which these loans of $20,000 each could be respectively charged.

Further, before the loans of Eric were completed, Mrs. Pierce was advised by reputable counsel that there would be, at the most, only three shares upon the final distribution, whereby Mrs. Pierce and her

brother would take two-thirds. She testifies, and there seems no reason to doubt that at least she so understood, that she was advised by the same able counsel that these loans to herself and her brother, upon the security of their shares of the fund, were proper and lawful for her to make. Such advice, if given, may have depended in part upon the theory held by such counsel—and so forcefully presented that they convinced the District Court in the former hearing—that the will was invalid in so far as it tied up real estate so as to secure the title to an unborn child of an unborn child. This invalidity, counsel thought, would leave Mrs. Pierce's mother with the full title as sole heir, and Mrs. Pierce is said to be the devisee of everything under her mother's will. With this environment to the loans, their illegality, now finally apparent, should be supplemented by loss to the estate before they serve to destroy the compensation salary. We find no inflexible rule that to make unlawful loans is to forfeit compensation. That is the usual result; but there is room for the exercise of judicial discretion. Garesche v. Levering Co., 146 Mo. 436, 454, 48 S. W. 653, 46 L. R. A. 232; Myers' Appeal, 62 Pa. 104.

Neither such loss nor its absence as yet sufficiently appears. If Mrs. Pierce or her surety restores these amounts to the fund, there will be no loss on account of her unlawful conduct in making the loans, and the salary should be allowed to her. If she or her surety does not do so, within a reasonable time to be fixed by the District Court, then all tolerance on this score should be considered as exhausted, and the loss as for this purpose fixed, and her salary claim be finally disallowed.

[5] The failure to file accounts for the nine years from 1913 to 1922 is not fatal to the claim of compensation. Litigation was pending; all parties seem to have acquiesced in delaying a further account until its proper basis was determined.

The order of the District Court will be modified in accordance with this opinion, and the case will be remanded for that purpose, and for further proceedings in due course.

## On Application for Rehearing.

PER CURIAM. In the opinion we assumed that the seventh report was duly confirmed. The tender of a copy of the order of confirmation, therefore, adds nothing material to the record. Appellant would have us infer that the reference in this order to the report and "the vouchers and exhibits relating thereto and filed therewith" shows that these pledge notes now disallowed were exhibited to the court and thus specifically included in the approval. The inference is not justified. The only pertinent "exhibit" referred to in the report is that mere list of assets which does not properly describe these notes. No pertinent voucher is shown to have been "filed therewith," if, indeed, anything properly called a voucher could show the nature of an investment. Nor is this inference supported by whatever presumption there may be that the terms of the will were being carried out. The paragraph which requires "securities purchased by him or the bonds or mortgage for the money loaned" to be exhibited by the trustee to the court is for the specific purpose of showing that they are made payable to the

trustee and refers to investments out of the proceeds of real estate, which the court has shortly before ordered sold.

The provision of the will regarding annual reports does not require any exhibition of securities purchased or of mortgages acquired, but only that the full report in writing shall show particularly "the changes, if any, made during the year in the trust investments."

In the absence of a family agreement mitigating the burdens put upon the trustee by the order below, as modified by us, we see no permissible alternative for their full performance.

The rehearing is denied.