Moses S. Rogers et al., Trustees (Estate of Con-
stand A. Moeller) v. Augusta J. English et al.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued June 3—decided July 22, 1943.

*George W. Crawford,* for the plaintiffs.

*Charles M. Lyman,* for the defendants Harriet L. Stevenson et al.

*Crenna Sellers* and *William B. Gumbart,* with whom, on the brief, was *Mary E. Manchester,* for the defendants Pearl L. Moeller et al.

*Arthur B. O'Keefe,* for the defendants Arthur B. O'Keefe, Guardian, et al.

MALTBIE, C. J. Constand A. Moeller, who died a resident of New Haven on June 1, 1914, left a will in

which, after directing the payment of debts and funeral expenses, he gave all his property to trustees with power to sell it, except certain stock which was to be held by them. The will then proceeds: "all surplus income and all avails of sales of personal property or real property shall be invested in mortgages on improved real estate in the New England States, the same to be double security for the amount loaned, and interest to be paid semi-annually in cash, and insurance and all taxes to be paid by the mortgagor; to pay to each of my children, Emma Lines, Augusta J. English, Constantina A. Rogers, Laura O. Kautz, Ida E. Konold, Constand R. Moeller, Lily E. Moeller, Herbert L. Moeller, all of said New Haven, and Clara T. Johnston, now residing in Germany, the sum of twenty-five hundred ($2500.) dollars during the first year after my decease, twenty-six hundred ($2600.) dollars during the second year after my decease, and thereafter such annual payment to each of them is to be increased by one hundred ($100.) dollars per annum until the annual income of each shall reach the sum of four thousand ($4000.) dollars per annum, beyond which amount their annual payments are not to be increased; said income is to be paid to each one of said children as long as any one of them survives; in other words, the incomes as above directed, not exceeding four thousand ($4000.) dollars a year, are to be paid to each of my said children up to the death of the last survivor, but none of the survivors is to receive more than is above directed; said incomes above provided are to be paid to each of said legatees in equal monthly installments." He added further provisions that, if any of his children died leaving issue surviving, the annual payments provided for the parents should be paid to their children during their lives or to the issue of such children until the death of

the last survivor of his children; that when this occurred the residue of the estate should be distributed to his grandchildren; and that the share of any grandchild who might die should be divided among his children, if any, but, in default of children, among the surviving grandchildren.

The plaintiffs, the trustees under the will, brought this action seeking a construction of certain provisions in the portion we have quoted. They are actively seeking a judgment that they be given power to make investments other than in mortgages meeting the description contained in the will, specifically, in bonds of the United States or other investments which are legal for trustees in Connecticut. As certain of the interested parties also urge that such a judgment be entered, we pass, without discussion, the question whether it is a proper function of the trustees to seek such relief. See *Belfield* v. *Booth,* 63 Conn. 299, 309, 27 Atl. 585; *Jacobs* v. *Button,* 79 Conn. 360, 362, note, 65 Atl. 151.

In the Restatement, 1 Trusts, § 167 (1), it is stated: "The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such a case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust." We have recognized this principle in *Russell* v. *Russell,* 109 Conn. 187, 197, 145 Atl. 648. See also *Hoffman* v. *First Bond & Mortgage Co., Inc.,* 116 Conn. 320, 328, 164 Atl. 656. It is by no means clear that the question of its application is presented by the questions stated in the reservation. The relief sought obviously calls for the exercise of

the equitable power of the court to permit a deviation from the express intent of the testator, not for the ascertainment of the intent disclosed in the terms of the will, which in this instance are perfectly clear. *Trust Co. of N. J.* v. *Glunz,* 119 N. J. Eq. 73, 77, 181 Atl. 27. As the question has, however, been argued before us without objection from any party and our answer must be in the negative, we have decided to consider it.

The contention in support of the rendition of such a judgment rests largely upon the claimed difficulty the trustees have in finding such mortgages as are described in the will in which they can invest money of the estate and upon the low interest rates on mortgage notes now claimed to be prevalent. The stipulation of facts upon which we must decide the case does not expressly refer to either of these matters. On the other hand, it does appear that in the year 1942 the trustees invested more money in new mortgages than they had in any year since the beginning of the trust except the years 1919 and 1928; that the percentage of yield on mortgages in 1942 had been exceeded in only two years since 1920; that the gross and net incomes of the estate were higher in 1942 than they had ever been; that while the cash on hand at the end of the year amounted to some $100,000, this would be only about 5 per cent of the value of the estate, and it does not appear from what source this cash was derived; and that the amount of cash on hand at the end of two previous years, 1936 and 1941, was larger, and at the end of 1935 almost as large. Moreover, since 1935 the income from the trust has in every year considerably exceeded the amounts directed to be paid to the beneficiaries designated in the will. Certainly we cannot hold as matter of law that the trustees have been so hampered in finding such mortgages as are

described in the will as seriously to jeopardize the interests of the estate, or that the restriction has interfered with the accomplishment of the testator's primary intent in providing for annual payments to his children. In *Russell* v. *Russell,* supra, 198, we said, after referring to certain cases: "These authorities point out, and the very nature of the authority given trustees under this principle necessarily requires, that it should be most carefully and sparingly used and it is to be borne in mind that it is the necessity of the situation which brings it into operation, not the mere fact that thereby the estate may be administered in a way which will be more advantageous to its beneficiaries." See 3 Bogert, Trusts & Trustees, p. 1798. The stipulated facts do not present a situation which justifies permission to the trustees to deviate from the instructions in the will as to the manner in which they shall invest funds of the estate.

The claim most strenuously pressed upon us is that of certain of the annuitants, who contend that the trustees may, in view of existing circumstances, make larger annual payments to the beneficiaries than those specified in the will. They point to various changes which have taken place in the economic conditions since the death of the testator; the imposition of the federal income tax, the effect of which is to decrease the amounts of payments to the beneficiaries which they can use for their own purposes; the increase in the cost of living and the decrease in the purchasing power of the dollar. They claim that an increase in the annual payment is necessary to accomplish what they contend to have been the general intent of the testator, to provide comfortable support for his children or, as stated in one place in their brief, to provide a standard of living in keeping with that which he had taught them to expect; that the fixing of the

amount of the annuities was a special intent, which, if in conflict with this general intent, must yield to it; and that the changes in circumstances to which we have referred have produced such a conflict. We are, of course, confined to the intent expressed in the will and may not go outside of it in the effort to give effect to what we conceive to have been the actual intent of the testator, much less his "motive," to quote an expression from the brief of these parties, in making the provisions he did.

There is nothing in the terms of the will in the least indicative of an intent on the part of the testator that the fixing of the amounts to be paid was a mere incident of a purpose to provide for his children a comfortable support or to afford them a standard of living in keeping with that to which he had accustomed them. When the will was before us on an earlier occasion, we referred to the injunction in the will, twice stated, that the payments to the children should not be increased beyond $4000 a year, an amount which was reached some years ago, and we said: "The emphasis which he put upon the restriction of the annual amount each of his children was to receive suggests a motive and one does not have to look far to find one that is at least legitimate. If any of his daughters did not marry, the provision he made would not be wholly inadequate for her reasonable support; and he may have thought it undesirable that his sons, or the husbands of his daughters, should they marry, should be relieved of the necessity of exercising initiative and industry; or he may have desired to build up, and pass over to his grandchildren an estate of sufficient size, so that, divided among them, it might still be expected to give each a very substantial sum." We also pointed out that, while it was very likely that the testator did not expect such a large increase in the

income of the estate as actually occurred or that there would be such a decrease in the purchasing power of the dollar as decidedly to shrink the real value of the annuities, these circumstances cannot justify disregard of the plain words of the will and the intent he has expressed in it. *Moeller* v. *Kautz,* 112 Conn. 481, 487, 152 Atl. 886. Whether or not our decision in that case is in effect res adjudicata of the issue we are now considering, we do not need to determine. Our re-examination of the will in the light of circumstances now before us leads us to no different conclusion.

The limitations on the amount to be paid evidently were very much in the testator's mind. By no rule which we know can a clear expression of a special intent which can be carried out be subordinated to a general intent the basis of which is not to be found in the words of the will but in an inference to be drawn from extraneous circumstances. *Meriden Trust & Safe Deposit Co.* v. *Spencer,* 127 Conn. 261, 264, 16 Atl. (2d) 349. Had the testator intended that the amounts of the payments to the children should fluctuate with changing circumstances, he naturally would have so indicated or at least have given the trustees a discretion to vary the amounts according to the needs of the children. It certainly is not without significance that the testator, evidently an astute business man, who had lived in New Haven since 1873, had in the course of his career experienced the great changes in living conditions produced by the times of financial crisis through which the country passed between that date and his death in 1914; and it certainly cannot be assumed that he would not have anticipated that, after his death, during the lives of his children, other periods would occur in which there would be similar great changes. In *Moeller* v. *Kautz,* supra, we concluded that the testator had expected that there

would be a surplus income above that needed for the annuities he provided. Under the terms of the will, he directed that this surplus be divided among his grandchildren. An increase in the amounts of annuities paid the children would necessarily decrease the amount to be distributed at the termination of the trust, and to that extent would be contrary to the will of the testator that they should receive all the fund which had not been previously expended under specific directions he had given. See *Jennings* v. *Hills*, 247 Ill. App. 98, 116; *Fidelity Union Trust Co.* v. *The J. R. Shanley Estate Co.*, 113 N. J. Eq. 562, 565, 167 Atl. 865. Even where the terms of a will disclose a general and a particular intent inconsistent with each other, effect is given to the former only "if the will can fairly be so read, considered as a whole." *Walsh* v. *McCutcheon*, 71 Conn. 283, 286, 41 Atl. 813; *Willis* v. *Hendry*, 127 Conn. 653, 665, 20 Atl. (2d) 375; see *Pennington* v. *Metropolitan Museum of Art*, 65 N. J. Eq. 11, 23, 55 Atl. 468. Nor does the fact that changing circumstances have altered the practical result of its provisions permit us to construe it otherwise than in accordance with the intent clearly expressed in it. "We must determine the testator's intent by his language and the circumstances then existing, with no attempt to provide for changes in circumstances then unanticipated. Such subsequent events cannot affect the construction of a will." *New Britain Trust Co.* v. *Stoddard*, 120 Conn. 123, 126, 179 Atl. 642.

These parties further claim that the word "dollars" as used in the will must be taken to mean dollars of the standard controlling currency of the United States when the will was made, which then were required to have a weight of 25.8 grains of gold nine-tenths fine; that today the standard for a dollar has a weight of $15\frac{5}{21}$ grains of gold nine-tenths fine; and that there-

fore the amounts to be paid to the children should be determined by finding the equivalent of the sum designated in the will in dollars upon the present standard as compared to that in existence when he died. The brief of counsel neglects, however, to state that the standard fixed by the Congress has remained unaltered since long before the death of the testator, except by a presidential proclamation of January 31, 1934, fixing the present standard under an emergency act of Congress passed in 1934, which was originally to expire June 30, 1939, but which has been extended from time to time until the present expiration date is June 30, 1945. 31 U. S. C. A. § 314, Sup. 1942, pp. 136, 139; Pub. L. No. 42, 78th Cong., 1st Sess. That aside, this is not a case where an attempt is made to pay a legacy of a certain number of dollars in depreciated paper currency, as in a number of the cases gathered in the note 63 A. L. R. 524, cited in the brief of these parties. When the testator provided for annuities amounting to a certain number of dollars, he meant dollars which are a part of the legal currency of this country; *The Confederate Note Case,* 19 Wall. (86 U. S.) 548, 557, 22 Law Ed. 196; *Kelley* v. *Sullivan,* 201 Mass. 34, 36, 87 N. E. 72; and when he made those annuities payable over a period which would extend until the last survivor of his children died, he evidently contemplated annual sums to be paid in legal currency of the United States as it existed at the times the payments became due. It would be attributing to him a very unlikely intent to hold that he meant that each payment should be based upon the standard value of that currency in effect at the time he died. The situation is not unlike that in *Matter of Lendle,* 250 N. Y. 502, 166 N. E. 182, 63 A. L. R. 521, where the testator made legacies in German marks, which had very greatly depreciated in value, and the court said (pp. 505, 506):

"The will contains no intimation that when the testator gave general legacies of marks he intended to give legacies payable in dollars at the prevailing rate of exchange, either at the time he made the will or at the time of his death. . . . The legacies are payable in marks, not in dollars, and in marks which pass as such in the market at the time the legacies are paid."

The other questions asked require little discussion. In *State* v. *Hunter*, 73 Conn. 435, 442, 47 Atl. 665, we held that it was improper for a trustee to advance money to and take the note of one who presumably would have an interest in the fund at the expiration of the trust. It is the general rule that a trustee may not make personal loans from the fund without security. 2 Scott, Trusts, § 227.8. The children have and can have no interest in the principal of the fund under the terms of the will; but even where a beneficiary had a contingent interest in the fund, it has been held that loans by a trustee to him on the security of his interest in the fund are improper. *Pierce* v. *Dahlgren*, 300 Fed. 268, 270; *Craven's Case*, 43 N. J. Eq. 416, 5 Atl. 816. In this case a loan to the beneficiaries whether with or without security would be an investment in a manner contrary to the express provisions of the will. For the trustees to pay income taxes imposed on the beneficiaries on account of the annual payments received by them would be to pay for them personal debts they owed, and tantamount to making payments to them in excess of the amounts specified in the will; and, as we have pointed out, the imposition of this tax, even if it was unanticipated by the testator, at least to the amount now or in the future to be imposed, and though it reduces the net sums available to the beneficiaries for their own uses, affords no sound reason for a conclusion that the trustees may depart from the terms of the will. *Moeller* v. *Kautz*,

supra. It necessarily follows that no child or grand-child is entitled to receive any part of the income or principal prior to the termination of the trust except such as is derived from the provisions of the will for annual payments of the sums stated.

To questions (a), (b), (d), (e) and (f), stated in the footnote,[1] we answer "no." The other questions require no answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.

---

[1] (a) Whether by the true meaning and intendment of the will of said testator, and in view of the changed conditions now prevailing the plaintiffs may invest from time to time moneys in their hands available for investment, in war bonds or other evidence of indebtedness of the United States, and also in any other investments which are legal investments for trustees in Connecticut, notwithstanding the requirement of said will that all such moneys be invested in fifty per cent first mortgages on New England real estate?

(b) Whether the testator intended to assure his annuitants, during the remainder of their respective lives, at least such a standard of living as could be maintained in the year of 1913 by the amounts of the annuities fixed by his will?

(d) Whether to temporarily relieve the financial hardships of any of the annuitants due to the fact that the amount of the annuities, under changed conditions, do not permit such annuitants to live in accordance with the standards or station of life to which he or she has been accustomed, the trustees may, in their discretion, make loans or advancements to such annuitants on their personal notes, with or without security?

(e) Whether any living grandchild or grandchildren whose parent (a child of the testator) has deceased, has or have, in addition to the annuity of the deceased parent to which he or they may have succeeded, any distributable interest in either the corpus or accumulated income of the estate, prior to the death of the last survivor of the testator's children?

(f) Whether the Trustees may pay the income tax levied now or in the future against the annuities provided under the will of the testator, if the amount of the same shall so reduce the annuities, as to make it impossible for the annuitants, or any of them, to maintain themselves at the standard of living to which he or she has been accustomed?