THE BRIDGEPORT-CITY TRUST COMPANY, TRUSTEE (ESTATE OF BENJAMIN L. STOWE) v. HELEN L. S. ECCLES ET AL.

SUPERIOR COURT       NEW HAVEN COUNTY       FILE NO. 72878

Memorandum filed May 28, 1951.

*Paul L. Miller,* of Bridgeport, for the Plaintiff.

*John V. O'Brien,* of New Haven and *Omar W. Platt,* of Milford, for the Defendants.

CORNELL, J.  In the amended substituted complaint, the plaintiff, hereinafter referred to as the trustee, claims an adjudication of certain matters which have arisen under the provisions of the last will and testament and a codicil thereto of Benjamin L. Stowe, late of Milford, in this state, deceased, and for advice with reference to the same such as to enable it to properly execute its trust.  The defendants are Helen Lois Stowe Eccles, the latter's two minor sons, Thomas S. Eccles and Charles B. Eccles, a minor daughter, Lois-Helen Eccles, the unborn issue of Helen Lois Stowe Eccles, the lineal descendants of Frederick Stowe, deceased, Thomas B. Eccles and Sarah A. Sprague.  The questions propounded occur, principally, in connection with article seventh (a) of the will, which contains certain provisions concerning a home for an adopted daughter.  The latter before her marriage was Helen Lois Stowe and after that event, Helen Lois Stowe Eccles. She was legally adopted in the

state of New Jersey in January, 1904, by the testator and his then living wife, whose marriage was childless, and is hereinafter referred to as the daughter. Thereafter, she made her home with her adopting parents, remaining there after testator's wife's death and continuing to do so, following her marriage, with her husband and children as they were born to her, until December, 1943, which was several months after testator's decease. The testator, when he executed the will, was eighty-five years old and the daughter then thirty-three. The testator made the codicil Octobr 1, 1936, at which time he was of the age of eighty-eight.

Article seventh (a) provides, in effect, that the trustee shall retain possession of the premises known as 10 Green Street in Milford, which is the property where the testator and the daughter with her husband and children all lived at the time of the testator's death, as long as it might be occupied by the daughter, and likewise if the daughter's children should decide to live there, then until the youngest of them attain her majority, in either of which events, "the Trustee shall pay all expenses of upkeep, repairs, maintenance and insurance." The trustee, however, is authorized, if it deems desirable, to sell the premises upon the daughter's written request, or that of her children who have reached the age of sixteen years and the guardians of any who have not attained that age.

The testator died on January 30, 1943. In December following, the daughter, with her husband and children, vacated the property, hereinafter referred to as the Green Street property, in Milford and took up the family home at Mendham, in the state of New Jersey, because the daughter's husband's employment was then in that state. On June 24, 1949, the daughter, pursuant to the provisions of article seventh (a), together with certain of her children, all of whom were then represented to be over the age of sixteen years, executed and filed with the trustee a request in writing that the Green Street property be sold "and that the proceeds therefrom be added to other moneys from the residue and be used to purchase a residence in the state of New Jersey to be occupied as a residence by said petitioners and under all the terms and conditions of the trust provisions of said Article Seventh(a) of said last will and Testament." The Green Street premises had been vacant since the daughter and her family left it in December, 1943, and remained so until, as requested, the trustee sold it at an unstated date

thereafter, receiving as the net consideration therefor the sum of $8846.38. Due to the inflated value of real estate since 1943 and at present, a suitable home for the daughter and her children would require an expenditure of $30,000, so that the proceeds of the sale, alone, are wholly inadequate for the purpose. The value of the trust estate as of August 4, 1950, exclusive of the Green Street property, was $195,061.

The gist of the defendants' claim is "that it was the paramount interest of the testator that the trustee should provide a suitable home for his daughter and grandchildren to be paid from the corpus of said residuary trust fund and the title to be taken in the name of the plaintiff as trustee of said residuary trust." As elsewhere stated in their brief, the question simply stated is, "Can the Trustee dip into the residuary principal for this purpose?". This, of course, must be determined by discovery of the intention of the will in that respect. " 'The most inflexible rule of testamentary construction . . . is that the intention of the testator should govern . . . and this intention is to be sought in the language used by the testator in the light of the circumstances surrounding and known to him at the time the will was executed.'" Reaney v. Wall, 134 Conn. 663, 667. In claiming that the trustee is authorized to supplement the amount realized from the sale of the Green Street premises by the additional necessary sum from the residuary trust fund, certain defendants lay much stress on the fact of the adoption of the daughter by the testator and his wife and the long period during which they thereafter lived together. This, they argue, was productive of a natural inclination to provide a home for the daughter after the testator's decease. This contention overlooks the implicit condition that, granting the presence of such a design, it still lay with the testator to prescribe the conditions under which such a provision might be enjoyed, according as he might deem the necessities of the daughter or as he might anticipate the situation to be after his death, having regard, among other considerations, to the value of his estate, its constituent elements and the bequests which he might wish to make to others whom he might feel were worthy of his bounty. But irrespective of these matters, extrinsic circumstances, while they may be of aid to a construction of a will which in whole or in part is ambiguous, uncertain in expression or obscure in meaning, cannot prevail over a provision which is clear in its expression of intention. "Extrinsic circumstances may explain the language of the will: they cannot contradict, vary, or control

it"; *Day* v. *Webler,* 93 Conn. 308, 312; "or interpolate a testamentary gift which its own tenor did not justify." *Central Hanover Bank & Trust Co.* v. *Nesbit,* 121 Conn. 682, 688; *Hartford-Connecticut Trust Co.* v. *Thayer,* 105 Conn. 57, 65. Where a will contains no ambiguity or obscurity, the intention expressed therein governs and cannot be changed or modified by extraneous evidence. *Morehouse* v. *Bridgeport-City Trust Co.,* 137 Conn. 209, 216.

In substance, article seventh (a) of the will provides that the trustee shall retain possession of the Green Street property in Milford and pay all expenses of upkeep, repairs, maintenance and insurance, as long as it shall be occupied by the daughter; likewise, if the latter's children shall decide to occupy it, until the youngest of them attain her or his majority. The trustee is authorized to sell the property upon the daughter's written request or that of her children who have reached the age of sixteen years, in either of which events the trustee may "if it deems desirable," purchase another residence to be held under like conditions as that so sold, or it may add the proceeds to the balance of the residuary trust estate, upon which event "this special trust shall thereupon cease" and will in any event end when the youngest child shall reach her majority. The principal question with which the trustee is concerned is whether authority is conferred upon it in case it determines to purchase another residence to take funds from the residuary estate to supplement those derived from the sale of the Green Street property, to buy another to be occupied by the daughter or her children as a home. The query is answered by the explicit pertinent provision of article seventh (a) in the negative. This contains no express provision purporting to confer such an authority as is referred to. On the contrary, the applicable language limits the amount which the trustee may invest to provide a new residence in place of that sold to that which is realized from the sale of the Green Street realty. The expression is: ". . . provided further, however, . . . said Trustee may, if it deems desirable, sell said real estate and *with the proceeds therefrom,* purchase another residence to be held under like conditions; or add the proceeds to the balance of the residue of my estate" (italics supplied). According to this language, the sum which, in the alternative, is to be paid into the residuary trust estate is that netted from the sale of the property; that to be devoted to the purchase of another home, in the other alternative, is precisely the same. The provision is not only descriptive of the source of the fund from

which to finance the purchase of a new residence but also definitive of the amount to be expended for the same. This limitation of the sum to be invested for the acquisition of a building to be occupied by the particular beneficiaries as a residence is in itself an implicit direction that no part of the residuary trust estate is to be devoted to that purpose in whole or in part. The expression recited supra is so clear that evidence of surrounding circumstances is incompetent to vary or explain its meaning. Neither is there anything upon which to predicate an implied authority in the trustee to expend any sum from the residuary trust estate in excess of that received as the proceeds of the sale. See *Phoenix State Bank & Trust Co.* v. *Johnson,* 132 Conn. 260, 265.

Some reference has been made in argument to the effect that the situation disclosed would justify the court, in the exercise of its powers in equity, to permit a deviation from the express intent of the testator, to allow a withdrawal of sufficient funds from the residuary trust which, when added to the proceeds of the sale of the Green Street property, would enable the trustee to purchase a home for the daughter and her family. Reading the questions submitted by plaintiff in connection with the content of the amended substituted complaint, it would appear that the subject matter as to which the plaintiff trustee wishes to be advised is whether such a course of action would be permissible. In this respect the "relief sought obviously calls for the exercise of the equitable power of the court to permit a deviation from the express intent of the testator, not for the ascertainment of the intent disclosed in the terms of the will, which in this instance are perfectly clear"; *Rogers* v. *English,* 130 Conn. 332, 335; for the will makes no provision authorizing the trustee to appropriate any such sum in excess of that received for the sale of the property in question for the purchase of another residence for defendants. This conclusion precludes the existence of any basis upon which to predicate a deviation from the expressed testamentary intention. *Rogers* v. *English,* supra, 336 et seq.

It is not inconceivable that the provisions of article seventh (a) may well have been made in the anticipation that conditions might change in the course of the years so that whatever sum might eventuate from the sale of the Green Street property might be insufficient to purchase another residence for the daughter with it. This might have been one of the contingencies the testator had in mind when he authorized the trustee

at its election to "add the proceeds to the balance of the residue of my estate to be held upon all the terms and conditions thereof . . . and this special trust shall thereupon cease." If, however, it be true, as certain of the defendants contend, that the testator did not foresee the likelihood that economic conditions would so change over the years following his death and the price of real property become so inflated or enhanced in value as to render the proceeds of the sale of the Green Street property quite inadequate for the acquisition of a new residence suitable for such a home for the daughter and her family as that to which they had become accustomed, such a condition would justify no departure from the clearly expressed intention of the will. *Redpath* v. *Auchincloss*, 132 Conn. 690, 696. " 'It is of no use to speculate upon what she would have intended had she contemplated the deficiency which confronts the court. She had no intention about it. She did not consider the contingency. We must construe what she said, and we must construe it in the light of the recognized rules of construction, and not by speculation as to what she would have intended had she foreseen the present situation.' " *First National Bank & Trust Co.* v. *Baker*, 124 Conn. 577, 589. "Nor does the fact that changing circumstances have altered the practical result of its provisions permit us to construe it otherwise than in accordance with the intent clearly expressed in it." *Rogers* v. *English*, supra, 340. "However, even if future events did not accord with his anticipations, the eventualities must be adapted to the terms of the trust, not the trust to the events." *Hills* v. *Travelers Bank & Trust Co.*, 125 Conn. 640, 646.

In reaching the conclusions stated supra, the court makes no reference to the provisions of the will other than article seventh (a) for the reason that nothing contained in them could furnish a foundation upon which to vary the meaning of the passage directly involved and they are so lengthy that to recite or discuss them would unduly extend this memorandum.

As respects the questions propounded by the trustee the court advises as follows: (a) Could the trustee take from the balance of the residue sufficient funds to make up the difference and purchase a home for the said Helen Stowe Eccles and her children in the state of New Jersey or elsewhere, but subject to the trust provisions of the will and codicil? The answer is "No." (b) Whether said course of action would be fair to all the parties involved and substantially carry out the desires of

the testator as indicated by his said last will and codicil? This answer to this question is comprehended by that to (a), supra, and is "No."

The sum of $250 is allowed to John V. O'Brien, Esq., and a like sum of $250 to Omar W. Platt, Esq., as fees for their participation as counsel.